IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-883

Filed 20 February 2024

Wake County, Nos. 21 CRS 2396-99, 2404-07

STATE OF NORTH CAROLINA

v.

CHAD COFFEY

Appeal by Defendant from Judgments rendered 10 February 2022 by Judge R. Allen Baddour, Jr. in Wake County Superior Court. Heard in the Court of Appeals 19 September 2023.

*Attorney General Joshua H. Stein, by Assistant Attorney General Caden W. Hayes, for the State*

*Cheshire Parker Schneider, PLLC, by Elliot S. Abrams, for Defendant-Appellant.*

*Samuel J. Davis, Daniel K. Siegel and Kristi L. Graunke, for amicus curiae American Civil Liberties Union of North Carolina Legal Foundation.*

*Essex Richards, P.A., by Norris A. Adams, II, for amicus curiae North Carolina Fraternal Order of Police.*

HAMPSON, Judge.

**Factual and Procedural Background**

Chad Coffey (Defendant) appeals from Judgments rendered pursuant to jury verdicts finding Defendant guilty of twelve counts of felony obstruction of justice. The Record before us, including the evidence presented at trial, tends to show the

following:

Defendant was a deputy sheriff in Granville County, North Carolina for over two decades. In 2007, Defendant received his firearm instructor certification and obtained additional specialized instructor certifications. These instructor certifications allowed Defendant to teach in-service courses for law enforcement officers to satisfy requirements set by the North Carolina Sheriffs' Education and Training Standards Commission (the Commission). The Commission establishes minimum education and training standards for justice officers, monitors compliance, and certifies all justice officers have satisfied those standards, including firearm training. N.C. Gen. Stat. § 17E-4(a) (2023). All active deputies who carry a firearm must annually complete in-service training, including a classroom portion and firearm qualification to maintain their law enforcement certification.

At the urging of Sheriff Brindel Wilkins and Chief Deputy Sherwood Boyd, Defendant certified Wilkins' and Boyd's attendance at mandated trainings neither had attended. Although neither Wilkins nor Boyd qualified at a shooting range, Defendant filled out forms indicating firearms scores neither had attained. Defendant acknowledged at trial he had falsified these documents.

On 26 October 2021, Defendant was indicted on fourteen counts of felony common law obstruction of justice, two of which were later dismissed, and fourteen counts of felony obtaining property by false pretenses, two of which were also later dismissed. Each of the indictments for obstruction of justice alleged Defendant had

"unlawfully, willfully and feloniously with deceit and intent to defraud, did commit the infamous offense of obstruction of justice by knowingly providing false and misleading information in training records[.]" The indictments then specified Defendant had indicated in documents mandatory in-service training and firearm qualifications had been completed by Sheriff Wilkins and Chief Deputy Boyd "knowing that [the trainings] had in fact not been completed, and knowing that these records and/or the information contained in these records would be and were submitted to [the Commission] thereby allowing" Wilkins and Boyd to maintain their law enforcement certifications when they had failed to meet the requirements.

Defendant's trial began on 7 February 2022. On 10 February 2022, the jury delivered its verdict finding Defendant guilty of all twelve counts of obstruction of justice and not guilty of each count of obtaining property by false pretenses. The trial court sentenced Defendant to five to fifteen months of imprisonment on the first count of obstruction of justice. The remaining counts were consolidated into two class H felony Judgments with suspended sentences of five to fifteen months of imprisonment. Defendant timely filed written Notice of Appeal on 14 February 2022.

## **Appellate Jurisdiction**

The trial court rendered Judgment and sentenced Defendant on 10 February 2022. The Record also reflects written Judgments signed by the trial court on 10 February 2022, but these Judgments are neither file-stamped nor certified by the Clerk. Rule 4 of the North Carolina Rules of Appellate Procedure provides appeal

from a judgment *rendered* in a criminal case must be given either orally at trial or by filing notice of appeal with the clerk of superior court and serving copies thereof upon all adverse parties within fourteen days after entry of the judgment. N.C.R. App. P. 4 (2023). Here, the Record reflects the written Judgments were signed by Judge R. Allen Baddour, Jr. on 10 February 2022, and Defendant's written Notice of Appeal was file-stamped on 14 February 2022. There is no dispute between the parties that Judgments were in fact entered and Defendant's written Notice of Appeal was timely. Therefore, this Court has appellate jurisdiction over this appeal.

## Issue

The dispositive issues before us are whether: (I) obstruction of justice is a cognizable common law offense in North Carolina; and (II) the indictments in this case were sufficient to allege common law obstruction of justice.

## Analysis

### I. Common Law Obstruction of Justice

As a threshold matter, Defendant contends obstruction of justice is not an offense at common law in North Carolina. Thus, Defendant asserts the indictments fail to allege a valid offense. We disagree.

Our legislature adopted the common law by statute, providing: "All such parts of the common law as were heretofore in force and use within this State . . . are hereby declared to be in full force within this State." N.C. Gen. Stat. § 4-1 (2023). Contrary to Defendant's assertions, obstruction of justice was historically an offense at common

- 4 -

law, and our courts have consistently recognized it as a common law offense. Blackstone described a series of "offenses against public justice" in his treatise on English common law. 4 William Blackstone, *Commentaries on the Laws of England* 127-41.

Moreover, our courts have consistently recognized common law obstruction of justice as a cognizable offense. *See e.g.*, *State v. Bradsher*, 382 N.C. 656, 659, 879 S.E.2d 567, 570 (2022); *State v. Ditenhafer*, 373 N.C. 116, 128, 834 S.E.2d 392, 400 (2019); *State v. Mitchell*, 259 N.C. App. 866, 878, 817 S.E.2d 455, 462-63, *disc. review denied*, 371 N.C. 478, 818 S.E.2d 278 (2018). Our Supreme Court has even expressed that the existence of statutory forms of obstruction of justice did not serve to abrogate the common law offense. *In re Kivett*, 309 N.C. 635, 670, 309 S.E.2d 442, 462 (1983) ("Obstruction of justice is a common law offense in North Carolina. Article 30 of Chapter 14 of the General Statutes does not abrogate this offense."). Thus, common law obstruction of justice is a cognizable offense in North Carolina.

II.    Sufficiency of the Indictments to Allege Common Law Obstruction of Justice

Defendant further argues the trial court erred by denying his Motion to Dismiss the indictments because they fail to allege facts supporting the elements of obstruction of justice. In particular, Defendant contends, among other things, that while the indictments allege Defendant committed "the infamous offense of obstruction of justice" they do not allege facts to support the element that Defendant

acted to obstruct justice. The State contends this is "a mere semantic complaint[.]" The State argues there is no material difference between the essential element of the offense and the description of the alleged misconduct in the indictment.

"An indictment need not conform to any technical rules of pleading but instead must satisfy both statutory strictures and the constitutional purposes for which indictments are designed to satisfy, i.e., notice sufficient to prepare a defense and to protect against double jeopardy." *State v. Lancaster*, _ N.C. _, _, 895 S.E.2d 337, 340 (2023) (quoting *In re J.U.*, 384 N.C. 618, 623, 887 S.E.2d 859, 863 (2023) (citations omitted). A recent decision of our Supreme Court chronicles the General Assembly's adoption of the Criminal Procedure Act and the consequent shift away "from the highly technical, archaic common law pleading requirements which promoted form over substance." *Lancaster*, _ N.C. at _, 895 S.E.2d at 340 (quoting *In re J.U.*, 384 N.C. at 622, 887 S.E.2d at 863). Rather, indictments and other criminal pleadings are:

> sufficient in form for all intents and purposes if [they] express the charge against the defendant in a plain, intelligible, and explicit manner; and the same shall not be quashed, nor the judgment thereon stayed, by reason of any informality or refinement, if in the bill or proceeding, sufficient matter appears to enable the court to proceed to judgment.

N.C. Gen. Stat. § 15-153 (2023).

Still, an indictment must, however, contain "[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts

facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation." N.C. Gen. Stat. § 15A-924(a)(5) (2023). "The sufficiency of an indictment is a question of law reviewed de novo." *State v. White*, 372 N.C. 248, 250, 827 S.E.2d 80, 82 (2019) (citation omitted).

Here, the indictments allege:

> [Defendant] unlawfully, willfully and feloniously with deceit and intent to defraud, did commit the infamous offense of obstruction of justice by knowingly providing false and misleading information in training records indicating that mandatory in-service training and annual firearm qualification had been completed by [Sheriff Wilkins/Chief Deputy Boyd] . . . knowing that it had in fact not been completed, and knowing that these records and/or the information contained in these records would be and were submitted to the North Carolina Sheriffs' Education and Training Standards Division thereby allowing [Sheriff Wilkins/Chief Deputy Boyd] to maintain his law enforcement certification when he had failed to meet the mandated requirements.

Our Supreme Court has held the elements of felony common law obstruction of justice are: "(1) the defendant unlawfully and willfully; (2) obstructed justice; (3) with deceit and intent to defraud." *Ditenhafer*, 373 N.C. at 128, 834 S.E.2d at 400 (quoting *State v. Cousin*, 233 N.C. App. 523, 537, 757 S.E.2d 332, 342-43 (2014)).[1] Our courts have

---

[1] At common law, obstruction of justice was a misdemeanor. *State v. Preston*, 73 N.C. App. 174, 175, 325 S.E.2d 686, 688 (1985). N.C. Gen. Stat. § 14-3(b) provides, however, "a misdemeanor offense as to which no specific punishment is prescribed to be infamous, done in secrecy and malice, or with deceit

defined common law obstruction of justice as "any act which prevents, obstructs, impedes or hinders public or legal justice." *Kivett*, 309 N.C. at 670, 309 S.E.2d at 462 (citation and quotation marks omitted).

The issue arises in determining what constitutes an "act which prevents, obstructs, impedes or hinders public or legal justice." It seems clear in our case law that false statements made in the course of a criminal investigation for the purpose of misleading or hindering law enforcement fall within the ambit of obstruction of justice. *E.g.*, *State v. Bradsher*, 382 N.C. 656, 669, 879 S.E.2d 567, 575-76 (2022) (false statements to State Bureau of Investigation in course of investigation); *Ditenhafer*, 373 N.C. at 123, 834 S.E.2d at 397 (indictment alleged "defendant . . . unlawfully, willfully and feloniously obstructed justice with deceit and intent to defraud and obstruct an investigation into the sexual abuse of a minor to wit: the defendant denied Wake County Sheriff's Department and Child Protective Services access to her daughter . . . throughout the course of the investigation."); *Cousin*, 233 N.C. App. at 531, 757 S.E.2d at 339 (false statements to law enforcement in a murder investigation resulting in a "significant burden imposed on the investigation . . . resulting from Defendant's various conflicting statements.").

Likewise, obstructing a judicial proceeding would also fall within obstruction

---

and intent to defraud, the offender shall, except where the offense is a conspiracy to commit a misdemeanor, be guilty of a Class H felony." N.C. Gen. Stat. § 14-3(b) (2023). Here, the State proceeded on a felony indictment alleging Defendant acted with deceit or intent to defraud.

of justice. *See Kivett*, 309 N.C. at 670, 309 S.E.2d at 462 ("Respondent's conduct with respect to the attempt to prevent the convening of the grand jury would support a charge of common law obstruction of justice."); *Preston*, 73 N.C. App. at 176, 325 S.E.2d at 688 (concluding indictment was sufficient to allege common law misdemeanor obstruction of justice based on a scheme to pay court costs and fine for a person impersonating a defendant to hide the real defendant's identity but failed to include allegations sufficient to support the felony charge); *Mitchell*, 259 N.C. App. at 876-77, 817 S.E.2d at 462 (sending falsified letters purporting to be defendant's victim recanting prior statements and making bomb threats to courthouses).

In addition to impeding criminal investigations and judicial proceedings, common law obstruction of justice has also been applied in the civil context. For example, in *Burgess v. Busby*, this Court held a complaint alleged a claim for common law obstruction of justice based on allegations "(1) defendant alerted health care providers to the names of the jurors in retaliation for their verdict; (2) this retaliation was designed to harass plaintiffs; and (3) defendant's conduct was meant to obstruct the administration of justice in Rowan County." 142 N.C. App. 393, 409, 544 S.E.2d 4, 13 (2001). Similarly, in *Grant v. High Point Regional Health System*, we also held a complaint stated a civil common law obstruction of justice claim, where medical defendants destroyed documents after being placed on notice of a potential malpractice claim based on allegations defendants "obstructed, impeded and hindered public or legal justice [ ] in that the failure of . . . Defendant . . . to preserve,

keep and maintain the x-ray film described above has effectively precluded . . . Plaintiff from being able to successfully prosecute a medical malpractice action against . . . Defendant . . . and others." 184 N.C. App. 250, 255, 645 S.E.2d 851, 855 (2007). This was true even though no investigation or lawsuit was actually pending. *Id.* at 256-57, 645 S.E.2d at 856.

As the State aptly notes, obstruction of justice is not limited to just criminal and civil judicial proceedings. For example, in *State v. Wright*, the defendant, a member of the North Carolina House of Representatives, was convicted of common law obstruction of justice based on his failure to disclose contributions and transfers from his campaign accounts to his personal accounts to the State Board of Elections in violation of campaign finance disclosure laws. 206 N.C. App. 239, 240, 696 S.E.2d 832, 834 (2010). This Court held the defendant's false reports "deliberately hindered the ability of the SBOE and the public to investigate and uncover information to which they were entitled by law: whether defendant was complying with campaign finance laws, the sources of his contributions, and the nature of his expenditures. Further, his false reports concealed illegal campaign activity from public exposure and possible investigation." *Id.* at 243, 696 S.E.2d at 835-36. Additionally, the court in *Wright* relied on our Supreme Court's precedent holding "that '[w]here, as alleged here, a party deliberately destroys, alters or creates a false document *to subvert an adverse party's investigation* of his right to seek a legal remedy,' a claim for obstruction of justice arises." *Id.* at 242, 696 S.E.2d at 835 (quoting *Henry v. Deen*,

310 N.C. 75, 88, 310 S.E.2d 326, 334-35 (1984)) (emphasis added). Central to the analysis in *Wright* was that the State Board of Elections had a statutory obligation to investigate campaign finance reports. *Id.* at 243, 696 S.E.2d at 836. "Thus, when defendant filed his reports with the SBOE, he knew that his misinformation was blocking the SBOE and the public from uncovering and further investigating any improper campaign activity[.]" *Id.*

Our case law in both the civil and criminal contexts also makes clear, however, that not every misstatement or fabrication arises to an act obstructing, impeding or hindering public or legal justice. For example, in *State v. Eastman*, this Court acknowledged:

> At common law, it is an obstruction of justice to suppress, fabricate, or destroy physical evidence. *Wharton's Criminal Law* § 588 (14th ed. 1981). *Wharton* illustrates the elements of the crime by citing various states' statutory definitions. All these statutes reflect the common law principal that when a person, "believing that an official proceeding is pending or about to be instituted and acting without legal right or authority . . . alters, destroys, conceals, or removes any record, document, or thing with purpose to impair its veracity or availability in such proceeding," he is guilty of obstruction of justice. *Wharton*, *supra*, quoting Colo.Rev.Stat. § 18-8-610(1) and Conn.Gen.Stat.Ann. § 53a-155(a).

113 N.C. App. 347, 353, 438 S.E.2d 460, 463 (1994). There, we held there was insufficient evidence the defendant had intentionally destroyed documents detailing an alleged sexual assault at a school or that the documents had been destroyed prior to an SBI investigation "in order to obstruct a criminal investigation[.]" *Id.* at 353,

438 S.E.2d at 464. In the civil context, we have likewise observed: "Simply put, we are not aware of any authority establishing that a mere witness . . . could be held liable for common law obstruction of justice on the basis of a failure to provide an accurate report or a failure to correct an allegedly inaccurate report requested by a party to litigation." *Blackburn v. Carbone*, 208 N.C. App. 519, 529, 703 S.E.2d 788, 796 (2010). We further determined summary judgment for the defendant was proper where:

> Plaintiff has neither alleged nor forecast any factual basis for believing that the alleged error in the report that [the defendant] provided to Plaintiff's counsel or any failure on the part of [the defendant] to correct that error at the request of Plaintiff's counsel represented an intentional act on the part of [the defendant] *undertaken for the purpose of deliberately obstructing, impeding or hindering* the prosecution of Plaintiff's automobile accident case.

*Id.* (emphasis added).

The consistent and clear teaching of these cases is that for an act to meet the elements of obstruction of justice—that is, an "act which prevents, obstructs, impedes or hinders public or legal justice"—the act—even one done intentionally, knowingly, or fraudulently—must nevertheless be one that is done for the purpose of hindering or impeding a judicial or official proceeding or investigation or potential investigation, which might lead to a judicial or official proceeding. *Cf. Eastman*, 113 N.C. App. at 353-54, 438 S.E.2d at 463-64 (where documentary evidence of sexual assault was discarded or destroyed, evidence was insufficient to show obstruction of justice where

evidence did not support finding defendant acted to subvert an SBI investigation).

Here, the indictments allege Defendant willfully and knowingly provided false and misleading information in training records knowing those records would be submitted to the North Carolina Sheriffs' Education and Training Standards Division for the purpose of allowing Sheriff Wilkins and Chief Deputy Boyd to maintain their law enforcement certification. While these alleged actions are wrongful, there are no facts asserted in the indictment to support the assertion Defendant's actions were done to subvert a potential subsequent investigation or legal proceeding.[2] For example, there is no indication in the indictment that Defendant acted purposely to hinder any investigation by the Education and Training Standards Division or to attempt to impair their ability to seek any injunctive relief against Sheriff Wilkins or Chief Deputy Boyd under N.C. Gen. Stat. § 17C-11(c). To the contrary, the indictments assert Defendant's acts were allegedly done for the sole purpose of allowing his supervisors to maintain their certifications.

As such, the indictments in this case fail to allege facts supporting an element of the offense: that Defendant obstructed justice defined as an act obstructing, impeding or hindering public or legal justice. *Kivett*, 309 N.C. at 670, 309 S.E.2d at 462; N.C. Gen. Stat. § 15A-924(a)(5) (2023). "A criminal pleading . . . is fatally defective if it 'fails to state some essential and necessary element of the offense of

---

[2] This is also not to suggest Defendant's actions might not constitute some other offense under our common or statutory law. We do not decide that issue here.

which the defendant is found guilty.' " *State v. Brice*, 370 N.C. 244, 249, 806 S.E.2d 32, 36 (2017) (quoting *State v. Ellis*, 368 N.C. 342, 344, 776 S.E.2d 675, 677 (2015) (citations omitted)).

Thus, here, the indictments were insufficient by failing to state an essential and necessary element of the offense of common law obstruction of justice. Therefore, the indictments were fatally defective. Consequently, the trial court erred in denying Defendant's Motion to Dismiss the indictments in this case.[3]

## **Conclusion**

Accordingly, for the foregoing reasons, we vacate the trial court's Judgments.[4]

VACATED.

Chief Judge DILLON concurs in separate opinion.

Judge STADING joins in the concurring opinion.

---

[3] As an additional matter, it is unclear whether the Judgments could stand with respect to the charges based on falsifying records as they relate to Sheriff Wilkins. The article establishing the Commission explicitly states: "Nothing in this Article shall apply to the sheriff elected by the people." N.C. Gen. Stat. § 17E-11(a) (2023). Further, at trial, the director of the Commission testified the Commission does not have the authority to revoke a sheriff's law enforcement certification. Thus, it is not clear Defendant could have obstructed justice by falsely verifying Sheriff Wilkins' qualifications.

[4] Because of our determination on this issue, we do not reach the remaining issues asserted by Defendant in his briefing to this Court.

No. COA22-883 – *State v. Coffey*

DILLON, Chief Judge, concurring.

I fully concur with the majority opinion. The actions of Defendant as alleged and proven do not constitute obstructions of justice. I write separately to note that Defendant's actions *may have* constituted another crime recognized under England's common law, such as "misconduct in public office". *See Clayton v. Willis*, 489 So.2d 813, 818 (1986) (Florida court recognizing "misconduct in public office" as an offense under the common law of England); *People v. Thomas*, 475 N.W.2d 288, 293 (1991) (defining common law misconduct in office as "corrupt behavior by an officer in the exercise of the duties of his office") (Michigan Supreme Court Justice concurring, contrasting common law misconduct in office with common law obstruction of justice). It may be that the common law offense has been abrogated by N.C. Gen. Stat. § 14-232, which is part Article 31 of Chapter 14, entitled "Misconduct in Public Office", and which makes it a misdemeanor for any "county officer" from "willfully swear[ing] falsely to any report or statement required by law to be made or filed, concerning or touching the county[.]" In any event, the indictments in the present case fail to allege that Defendant is a public officer or that he "swore" to any false information that he may have provided.